Good morning, and may it please the Court. My name is John Houston Pope. I represent Appellant Nutrition Management Services, which was the defendant in the court below. In 2008, Nutrition Management fell behind in its obligations to certain union benefit funds. In 2011, it began repaying those obligations through extra payments every month, $5,000 a month for a period of time, then $8,000 a month for another period of time. By May of 2015, the company thought it had finished its obligation. It had paid by its reckoning $260,000, what it had fallen behind. The records of the fund say $250,000, but we wouldn't be here over $10,000, Your Honor. If that was the case, everyone would reconcile accounts and write a check. What this case is about is that the pension fund subsequently filed suit and said, no, a much greater number is owed because we were charging you interest along the time that you were paying back on a monthly basis. We have your argument, and your argument is that you don't owe interest under ERISA until such time as the lawsuit is filed. That's correct. But you signed a contract earlier than that agreeing to be bound by the delinquency policy, which carried a 9% interest rate. We did not sign a contract agreeing to be bound by the delinquency policy, Your Honor. We signed a contract that did not mention the delinquency policy. It did not mention any adoption of the trust agreement. That's early on, but sometime before the lawsuit was begun . . . In 2014, we signed a contract in which we agreed to be bound effective August 1st of 2013. So it doesn't apply to obligations that arise before August 1st of 2013, Your Honor. It applies to obligations that arise after that date. So all of that interest that was charged before August 1st of 2013 had no contractual basis to be charged. It couldn't because all those obligations arose earlier. It wouldn't apply to what was unpaid as of the date that you agreed to be bound by the delinquency policy? I can see where an argument could be made for that, Your Honor, but I don't believe it's so. Because when you say that you're negotiating contracts under the Supreme Court decisions in Tackett and in the subsequent case, that they are temporal, the collective bargaining agreements. So they apply to the events within their time period. If you were wrong on that small point, would that be a small sum of money or would that be considerable? The amount of money that would be owed at that point would be a relatively small sum of money, Your Honor. It would cut out about half of the obligation and, in particular, some of the higher amounts of interest involved because the way that the accounting was done, for instance, the 2008 obligations continued to accrue interest. And by the time you get to 2013, they have five years of 10 percent interest on them that's going on the way that it's accounted for. And so a substantial amount of this is prior to the August 1st of 2013 period. Is there any significance to the language in Article 22 of the original collective bargaining agreement referring to the agreement and declaration of trust? Is there any meaning to that? Does it have any force at all? It is a statement consistent with Section 302C5 of the Labor Management Relations Act that the parties are agreeing that the monies will be held in a trust, which is something that you have to do in order to avoid having a criminal violation for transferring monies to a union, but it is not an adoption of the trust agreement or the things that go with the trust agreement. And I think that's consistent with the opinion that you wrote, Judge Jacobs, in Silverman, that Silverman talks at length about the idea of you have to be adopting with the language, not simply mentioning. And the collective bargaining agreements in Silverman, in fact, mention the trust agreements for the teamsters but don't adopt them. And so the significance, like I say, is for that legal purpose of being clear of Section 302, but otherwise it's not of any significance to the issues in this case. I think squarely the point is what is the effect of the 2014 amendment, and our view is that the 2014 amendment only applies to those obligations that arise beginning with the effective date of it. And that's why we concede that those obligations that arise beginning in August of 2013 would be subject to that. Earlier arising ones would not be. Why does interest start at the filing of the suit? That's just simply because ERISA has a statutory interest provision that is distinct from any contractual agreement. That sets the rate. The what? That sets the rate, does it? It says that in 1132G2 on the code section, 502G2 on the ERISA section, it says that if a lawsuit is brought that the fund is entitled to interest on unpaid contributions, and what that's been interpreted by the courts, including by this court, is that it's only those contributions that are unpaid at the time that the suit is initiated. That's what Ironworkers says. I'm just curious, what's the basis for that? The statute doesn't say that, does it? The statute uses the words unpaid contributions, and what Ironworkers and other cases have tried to sort out was does that mean unpaid contributions as of the time suit begins or as of the time judgment is entered? And the consensus is that it's as of the time suit begins. Normally, doesn't interest in contract matters run from the date the obligation to pay is due? It does in contract matters, Your Honor, yes. Is this essentially a contract matter? No. It depends on how you view it as that. And it's not a matter of whether or not the statutorily imposed interest is a statutorily imposed interest, Your Honor, and that is distinct from any contract type. It is the consensus of the courts because of the particular wording of that section of the statute that the unpaid contributions must be unpaid at the time. In this case, the dispute about interest is the rate, not the starting date. Is that fair to say? No, it is the starting date, Your Honor, and it is the rate. So, I mean, if to the extent it's the fact that the suit triggers an interest obligation, that's not in dispute? We agree that the suit triggers an interest obligation, and we disagree over whether the rate should be the delinquency policy rate or whether it should be the statutory rate. That's correct, Your Honor. If I can address briefly the notion of whether or not the delinquency policy can be considered a plan for purposes of 1132 G2, I think that it's clear from cases such as Silverman and Amara that what the statute defines as being a plan is narrow. It is more narrow than things such as you can't look to the trust indenture or the delinquency policy, and I think that the clearest test of this is consider what Amara said. Amara said you can't find terms of the plan in the summary plan description. What if they put the interest rate in the summary plan description instead of putting it into the plan? Would the court enforce it? I don't think under Amara it could because Amara would say that's not the plan, and one of the points of analysis for Amara, for Silverman, and for other cases is if you look at the 104B4 of ERISA, which is 1024B4 in the code, it's a list of the sorts of documents that exist that you have to turn over, and it distinguishes between trust indentures, other instruments under which the plan is governed, and the plan. And so the plan is obviously something distinct, and that's why we don't think the statute applies. Under your reading of all of this, however, the plan is making an interest-free loan to your client, correct? I mean, that's how it works out. Well, they did that until they got the client to sign on to their policies, yes. If they fail to do that or fail to file suit, then they're allowing the company to get away interest-free. Interest-free or under the ERISA statute? I think it was 3% generally, right? Well, when they file the suit, the ERISA statute will kick in, so it's a matter of whether or not they file suit, yes. And under the statute, it's going to be about 3% in most instances. If we agreed with what you said this morning, what would the remedy be that you seek from this court? We seek a remand to the district court to have this recalculated with regard to the proper dates and interest rates involved. When you say have this recalculated, can you be a little more precise? To have the obligations recalculated. We believe that there's only $5,000 to $10,000, and we're not sure it's going to have to be sorted out, which it is, remaining on the first audit period that was not paid before suit was brought. We would get that clarified and then impose interest accordingly, and we would recalculate the interest on the second audit period. I think the third audit period is essentially unchanged for purposes of this. Recalculate the amount of the unpaid obligation? Right. Is there a liquidated damage issue? There would be liquidated damages imposed once you figure that out, yes. It all follows from the calculations. That would also be for a district court on remand? Yes. And you're seeking recalculation of attorney's fees as well? We are challenging the attorney's fees, Your Honor. We believe the attorney's fees in this case were excessive. We think the case was vastly overstaffed. It was overworked. Yes, but a determination was made by the district court after analyzing the evidence, and that would be an abusive discretion standard, would it not? It is an abusive discretion, Your Honor, and I think if you look at these numbers, they're an abusive discretion. My point of comparison is that we have another case that will be heard in this court next month having to do with the health fund. The cases were parallel in every respect, including the fact that they had a brief trial in front of Judge Forrest. In that case, the attorneys had $50,000 in attorney's fees. In this one, it's nearly $200,000. There is such a gross disparity. Your only challenge to the attorney's fees is that they're excessive and the charges are out of line? That is, Your Honor, and there would be, of course, a matter of whether or not they have to be recalculated for successful in this appeal because they would have to be reduced consistent with results obtained. Thank you. You've reserved a couple minutes for rebuttal. I did, Your Honor. We shall hear you then, sir. Thank you. Good morning. Good morning. May it please the court, my name is Richard Siegel. Counsel to the plaintiff appellee in this case, the 32BJ North Pension Fund and its Board of Trustees. The first argument the defendant has raised in this appeal is that it was, as the court has noted, entitled to pay contributions for what we have referred to as the first audit many years late without owing any interest on those late contributions whatsoever. Defendant takes this position even though the district court made a finding of fact at trial that the pension fund never agreed to forego interest. That finding, defendant, does not appeal. But where does the . . . you say didn't agree not to, but where does the obligation to pay come from? The obligation to pay, Your Honor, arises from defendant's collective bargaining agreement which specifically references this pension fund's trust agreement. Under this court's standard in Jaspin, the reference to the trust agreement, which does significantly more than counsel stated, is sufficient by referencing the trust agreement and by agreeing to contribute to this pension fund, the defendant is thereby bound to the trust agreement. What are the words? As I recall, it's to maintain? It's to maintain the trust fund and . . . I'm sorry. What is it? To maintain the trust fund and what? The CBA, after obligating defendant to contribute, states that the parties understand, including defendant, that the pension fund, quote, will be held and administered . . . Held and administered. . . . under the terms of the trust agreement. So the defendant's CBA expressly contemplates that the pension fund will be administered according to its trust agreement. The trust agreement is relevant in a number of ways. For one thing, the trust agreement specifically authorizes these trustees to enter into . . . to create the delinquency policy. Then why in 2014 did you have a specific MOA that says, the defendant will be bound by the agreement and declaration of trust as it may be amended from time to time? Why would you need that specific contract language if you think that reference in Section 22 of the original CBA is sufficient? Well, that is something that the bargaining parties came up to. There's been some suggestion of, well, the fund did this, the fund did that. The fund is not a party to these contracts. The fund is a beneficiary of these agreements. And the answer, Your Honor, what we would say is the agreement simply . . . the letter agreement certainly . . . simply clarified defendant's obligation. It went from one prong of JASPIN, which is reference, reference being sufficient under JASPIN, to the other prong of JASPIN, which is express adoption. I would further note, Your Honor, that . . . How is what you read to me an express adoption? We don't take the position . . . We take the position that by agreeing to contribute to the pension fund and . . . References. That it's at least a sufficient reference. There's no question that the second agreement . . . My point was, all the second agreement did was clarify by moving from reference in the first agreement to express adoption in the later agreement. It clarified the obligation. I would also note, Your Honor, that . . . JASPIN said that the liquidated damages would not be available. JASPIN . . . How is that consistent with your view that a reference is enough to be completely bound by the trust agreement? Certainly, Your Honor. JASPIN actually dealt with a different type of penalty than the liquidated damages penalty that is contemplated by ERISA Section 502G for delinquent contributions. JASPIN is an interesting case. The pension fund there had a policy in which an employer was subject to a penalty for failure to maintain adequate records for audit. And the fund attempted to apply that penalty, which has no statutory basis at all . . . A 50 percent penalty, right? I believe that is correct. A 50 percent penalty of all of the contributions made in the prior year. Here, the fund is seeking nothing more than what the statute expressly allows. Except for the statutory interest rate. Well, the statutory . . . I would respectfully disagree with the suggestion that even that is not what the statute allows because the statute, what the case law says is preferentially it's the rate set under the terms of the plan. By agreement, by contract principles. The contract principle again being the defendant having entered into a contract. There was a reference earlier that there's no contractual basis for this. Defendant entered into a collective bargaining agreement, a contract, agreeing to be bound to this . . . by reference and then later express adoption agreeing to be bound to this trust agreement. The trust agreement in addition . . . By later express adoption, you're talking about the 2014 agreement? Yes. Yes, Your Honor. That's what we're talking about was what rate applies before the 2014 agreement? What interest rate? For the period of 1998 to 2014, you're saying that language in Article 22 of the CBA is sufficient? Yes, Your Honor. Because again, the first collective bargaining agreement binds the defendant to the second collective . . . binds the defendant to the trust agreement by reference. Under the terms of the trust agreement and that existed at the time . . . the, not only does it authorize the trustees to develop just this type of delinquency policy . . . but the trust agreement itself expressly provides that the interest rate under the terms of the . . . for the plan will be that as the trustees shall set from time to time. The trust agreement itself to which defendant agreed to be bound . . . But itself does not set the rate. It still requires another document by the trustees, right? It would require some other document or some other action, yes. And, I understand that there's . . . but these are all . . . the defendant has raised this question of this single document argument adopted by the First Circuit . . . never adopted by this court. And, I think that that is a total red herring. The issue, even if this court was to adopt that line of reasoning . . . the reason that the court in the First Circuit held that was because it had found . . . that that was a matter dealing with withdrawal liability. And, although defendant agreed to be bound to the trust agreement . . . there was never a reference to withdrawal liability. Here, that isn't the case. Here, the defendant agreed to be bound to the trust agreement . . . When you say agreed to be bound, you're still talking about the collective bargaining agreement? The collective bargaining agreement prior to the 2013 effective date of the later agreement. Yes, Your Honor. One other note I would make with respect to the impact of the later agreement . . . which is simply that both agreements were put before the district court, sitting as trier of fact. The district court heard all evidence presented with respect to those agreements . . . and then sitting as trier of fact, concluded that notwithstanding the existence of the second agreement . . . the first agreement was sufficient to bind defendant to the trust agreement. That is a finding of fact made by the district court and obviously that can only be overturned. Why isn't that a conclusion of law? What makes the finding of fact? Because the district court was presented with both agreements and it was . . . whether the first agreement in light of the existence of the second agreement . . . was rendered something less than it otherwise. Is that an interpretation of the first agreement? I believe it is. I would contend, Your Honor, that it's a factual interpretation. The meaning of a written document is a fact question? The determination of what defendant's obligations were under its collective bargaining agreement . . . I would contend is a factual determination. Was there extrinsic evidence as to the meaning of the collective bargaining agreement? Or was it just a matter of reading it? No, neither party presented any extrinsic evidence. So, it's simply the construction of a written document in the absence of extrinsic evidence? There was no finding by the district court that the agreements were in any way ambiguous . . . necessitating extrinsic evidence. They need not be ambiguous. Sometimes people just simply read written documents incorrectly. I would not dispute that that happens. I would dispute that it happened in this case, Your Honor. I understand. You think it was read correctly. But, you also say it's a fact question whether it was read correctly. In term . . . yeah, yes. I would take the position that whether the district court improperly interpreted . . . what the collective bargaining obligation was, was a question of fact. Got any authority for that? Standing here right now, I do not, Your Honor. I would also want to note, just turning briefly to the issue of what the appropriate interest rate was . . . once the lawsuit was filed, I would just like to point out that Your Honor was entirely correct. Absolutely nothing in Section 502G provides that interest only starts when the lawsuit was filed. That has . . . is there a case law to support that? There are some, but there's nothing in the statute that expressly provides that. Are you disputing that? I'm not . . . I'm . . . my position would be that it would . . . a correct interpretation of the statute would not be so limited. I don't dispute that the case law suggests otherwise. Including our court? Yes. Thank you.  Your rebuttal. Thank you, Your Honor. With regard to what the 1998 collective bargaining agreement means and whether or not it's sufficient that just the words appear in it in order to make it binding, I think Silverman and Jaspin both answer that question. Silverman says, and referring to what central states held, which is the Supreme Court opinion . . . we have to give it some deference . . . said when the . . . the Supreme Court has only recognized a cause of action under Section 502A for violating a plan term . . . when the employer violated a plan term, the CBA expressly bound the employer to perform. Expressly bound. The word express is there and the same terms are in Jaspin when it talks about really what it means by referencing. It then talks about distinguishing the cases where there is not an express adoption. So, I think it needs to be very express and the language that appears in that article is not an express adoption of anything in the trust agreement . . . or its policies or anything else. We can see that by the 2014 amendment. With regard to whether or not the . . . the agreements are an issue of fact or an issue of law . . . when you read an agreement, I think that Judge Newman, you were suggesting this. We've got the citations in our case. When you're just interpreting an agreement on its face, it is a question of law reviewed de novo by this court. And that is why we call on this court to take a look at this language and agree with us that it is not properly interpreted as the district court did. And, I have a great deal of respect for the district court judge. I knew her when she was in private practice before the bench. I have a great deal of respect for her, but I think she just got it wrong here. And, she got it wrong because it's 180 degrees from another case that she decided six years earlier called Concourse Village . . . which we've cited in here, where she found that the same language was not adoptive of the rules and regulations of a trust. And, there are other cases we've cited, including the Handley decisions, which come from 1996 . . . 5 or 96, and those are approximately contemporaneous with the CBA being put into place. And, for all those reasons, Your Honor, we would ask for the relief that we've discussed in this argument. Thank you. Thank you. William Reserve decision. Thank you both.